**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000954
09-SEP-2016
08:05 AM**

NOS. CAAP-15-000954 & CAAP-15-0000955

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF TH

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 14-1-00114)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Fujise and Reifurth, JJ.)

TH is the adopted daughter of Mother-Appellant and Father-Appellant (collectively, "Parents"). On December 10, 2015, the Family Court of the First Circuit ("Family Court")[1] entered orders and findings granting the State of Hawaiʻi Department of Human Service's ("DHS's") petition for foster custody of TH ("Petition"). Mother and Father separately appeal from the December 10, 2015 Orders Concerning Child Protective Act and the February 26, 2016 Findings of Fact and Conclusions of Law ("FOF/COL"). We have consolidated their cases for disposition on appeal.

Mother argues that the Family Court erred in awarding foster custody of TH to DHS based on a clearly erroneous finding that Mother refused to accept TH back into her home. Alternatively, she argues that even if she did refuse, the Family Court clearly erred in finding that TH was psychologically harmed as a result; and, regardless, her refusal was immaterial because

_____

[1]    The Honorable Steven M. Nakashima presided.

the evidence shows neither she nor TH was ready to reunify. Mother also purports to contest Findings of Fact ("FOFs") 33, 38, 39, 55, 59, 63, 67-72, 85, 97, and 98, in the court's FOF/COL.

Father argues that the Family Court erred in granting DHS's Petition based on insufficient evidence that Parents' acts or omissions harmed or threatened to harm TH's physical or psychological health or welfare. Father contests FOFs 13, 33, 37, 49, 55, 63, 67, 68, 70-74, 95-98 and Conclusions of Law ("COLs") 15-19.[2]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments they advance and the issues they raise, we resolve Mother and Father's respective points of error as follows, and affirm.

I. Waiver

As a threshold matter, we note that the parties have waived several of their purported challenges to various provisions in the Family Court's FOF/COL. That is, under the Hawai'i Rules of Appellate Procedure Rule 28(b)(7), this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position." *Kakinami v. Kakinami*, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (quoting *In re Guardianship of Carlsmith*, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007)). Here, although Mother includes FOFs 39 and 69 in her list of challenged findings, she presents no discernible argument as to *why* those FOFs are allegedly erroneous. Similarly, although Father includes FOFs 13, 33, 37, 49, 63, 70, and COL 19 in his alleged points of error, we can

---

[2] Note that FOF 73 is identical to COL 17; FOF 95 is identical to COL 15; FOF 96 is identical to COL 16; FOF 97 is identical to COL 18; and FOF 98 is identical to COL 19. As to these particular FOFs and COLs, Father lists all as points of contest in his Opening Brief. Mother, however, challenges FOF 97 and FOF 98 without naming COLs 18 and 19. Nonetheless, pursuant to COL 1, we construe FOFs 73, 95, 96, 97, and 98 as COLs and treat them accordingly below. COLs that involve mixed questions of law and fact, such as these, are subject to clearly erroneous review. *See Schiller v. Schiller*, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (App. 2009).

discern no argument regarding them. Accordingly, Mother and Father's purported challenges to these findings and conclusions are deemed to be waived and bind us on appeal. *Kakinami*, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16; *State v. Kiese*, 126 Hawai'i 494, 502, 273 P.3d 1180, 1188 (2012) (explaining that FOFs not challenged on appeal are binding) (citing *Kelly v. 1250 Oceanside Partner*, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006)). Moreover, we will not overturn any COLs that follow from these binding FOFs, so long as they do not misstate the law. *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 303 n.10, 141 P.3d 459, 476 n.10 (2006) ("It is axiomatic that '[i]f a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid.'" (quoting *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997))).

Therefore, the remainder of this disposition addresses Mother's challenges to FOFs 33, 38, 55, 59, 63, 67, 68, 70, 71, 72, 85, and COLs 18 and 19[3/]; and Father's challenges to FOFs 55, 67, 68, 71, 72, 74, and COLs 15, 16, 17, and 18.[4/]

## II. Standard of Review

On appeal, we review family court FOFs

under the "clearly erroneous" standard. A FOF "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." "'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."

On the other hand, the family court's COLs are reviewed on appeal *de novo*, under the right/wrong standard. COLs, consequently, are "not binding upon an appellate court and are freely reviewable for their correctness."

---

[3/] As stated in footnote 2, *supra*, we construe each FOF for which there is an identical COL as the latter. Therefore, we construe Mother's challenges to FOFs 97 and 98 as challenges to COLs 18 and 19.

[4/] As noted in footnote 2, *supra*, we construe Father's challenges to FOFs 73 and 95, 96, 97, and 98 as challenges to COLs 17, 15, 16, 18, and 19, respectively.

> However, the family court's determinations . . .
> [that] present mixed questions of law and fact . . . are
> reviewed on appeal under the "clearly erroneous"
> standard. . . .
>
> Moreover, the family court "is given much leeway in
> its examination of the [evidence] concerning a child's care,
> custody, and welfare, and its conclusions in this regard, if
> supported by the record and not clearly erroneous, must
> stand on appeal."

*In re Doe*, 95 Hawai‘i 183, 190, 20 P.3d 616, 623 (2001)
(citations, original brackets, and original ellipsis omitted);
*see also Kakinami*, 127 Hawai‘i at 136, 276 P.3d at 705.
Furthermore, "[i]t is well-settled that an appellate court will
not pass upon issues dependent upon the credibility of witnesses
and the weight of the evidence; this is the province of the trier
of fact." *In re Doe*, 95 Hawai‘i at 190, 20 P.3d at 623 (quoting
*State v. Jenkins*, 93 Hawai‘i 87, 101, 997 P.2d 13, 27 (2000)).

With these principles in mind, we turn to the merits of
the issues that Mother and Father have preserved on appeal.

III.  Discussion

    A.  Efforts to Reunify

Contrary to Parents' contentions, the Family Court did
not find that Mother unequivocally refused to accept TH back into
her home.  Rather, the plain language of FOF 71 clearly shows the
court found that Mother *refused to make a good-faith effort to
reunify* with TH once TH's treatment team had determined that TH
was ready to return to Parents' home, and that this resulted in
harm to TH.  Specifically, the court found:

> 71.  Life does not give us any guarantees of what the
> future will bring.  [Parents] should be applauded for having
> been willing to adopt [TH], her twin . . , and their sister
> . . . .  In that sense, they stepped up where others were
> not willing to . . . .  However, having made that
> commitment, [Parents] could not turn around and decide that
> they would sacrifice one of the siblings for the sake of the
> others.  Once [TH] was adopted, she became their child as if
> they had given birth to her.  Yes she was more difficult to
> care for, and yes it was appropriate for her to temporarily
> reside outside the home to get assistance.  But once it was
> determined that it would be appropriate to attempt to
> transition [TH] back to the family, the Parents needed to
> make a good faith attempt to work at that transition.  That
> did not occur in this case[,] and the failure to work at
> trying to transition [TH] back into the family has caused
> significant emotional harm to [TH] as she has felt

> abandoned, rejected and unloved by her family and cutoff
> from siblings.

This finding is also supported by substantial evidence, *see Balogh v. Balogh*, 134 Hawai'i 29, 38, 332 P.3d 631 640 (2014) (quoting *Kakinami*, 127 Hawai'i at 136, 276 P.3d at 706), which includes testimony given at the contested Petition hearing by witnesses who the court specifically determined to be credible[5] and several unchallenged findings.[6] *See In re Doe*, 95 Hawai'i at 190, 20 P.3d at 623.

Parents also challenge FOF 55, in which the court found that DHS filed the Petition partly because of "Parents['] continuing refusal to try to have [TH] reunify with the family." Mother's arguments on this point additionally implicate FOF 33 (finding that TH's unusually long transitional placement was caused by Parents' reluctance to attempt a transition of TH back with the family) and FOF 70 (finding that Parents "have not engaged in the task of working towards the possibility of [TH] returning to the family"). We hold, however, that DHS had the discretion to file the Petition, *see* Haw. Rev. Stat. § 587A-11 (Supp. 2014), and that FOFs 33, 55, and 70 were all, in fact,

---

[5]     The Family Court specifically found two DHS social workers, a Department of Health ("DOH") care coordinator, a DOH mental health supervisor, and other mental health professionals to be credible witnesses in FOFs 78-84, all of which are unchallenged and therefore will not be disturbed on appeal. *See Kiese*, 126 Hawai'i at 502, 273 P.3d at 1188; *In re Doe*, 95 Hawai'i at 190, 20 P.3d at 623. As for Mother's credibility as a witness, however, the court found in FOF 85 that, "in light of her inability to see that her choices were extremely harmful to [TH], the court gives limited weight to [Mother's] testimony." We decline to disturb this finding. *Id.*

[6]     In FOF 36, for example, the court found that Dr. John Mascarro, Psy.D., credibly testified that TH "had stabilized well enough by August 2011 that he felt [TH] was ready to try to begin working on transitioning back to [Parents'] family from the transitional family home." Additionally, in FOFs 40 and 42, the court noted that Dr. Mascarro credibly testified that "[TH] was angry because the long period of absence from . . . [Parents] caused [TH] to have trust issues about whether Mother wanted her at all[,]" and that "in the beginning of 2012[,] the plan for [TH] was switched from transitioning back to the [Parents'] family to adoption by the transitional home family because by the end of 2011 it became clear that Mother did not want [TH] back with her family."

supported by substantial evidence.[2/] Moreover in FOF 31, which is uncontested, the court found that "[i]t is intended that a child will eventually go from the transitional family home back to her own family[,]" yet by the time DHS filed the Petition, TH had been out of Parents' home for over five years.

There is also substantial evidence to refute Mother's contention that FOF 59 -- in which the court found that testimony by a credible mental health expert established that Mother decided to end therapy even though TH was ready to begin transitioning -- is clearly erroneous. That is, credible evidence shows that Mother's participation in therapy sessions was inconsistent; she declined family sessions once TH was determined to be ready to start transitioning back to Parents' house; and she declined to continue receiving updates on TH's status. Moreover, Mother admits that she agreed to accept TH back into her home only on condition that DHS and/or the DOH guarantee that TH would not revert to her previously aggressive and harmful behaviors. However, Mother provides no authority to support the notion that she was entitled to such a guarantee, and we find none.

Mother also argues that her willingness to accept TH back home was immaterial because she and TH were not ready to reunify. The testimony, however, shows that on two separate occasions, once in 2011 and once in 2014, DOH deemed TH ready to return to Parents and clearly indicated to Parents that services would be provided to facilitate reunification. Nonetheless, most of those services were never provided because Parents refused to accept TH's return unless DOH/DHS would make the proposed guarantee. Thus, we decline Mother's request that we overturn FOFs 33, 55, 59, 70, and 71, and Father's request regarding FOFs 55 and 71.

---

[2/]     This evidence includes both FOF 42 (see footnote 6, supra), which is unchallenged and binding on this court, as well as testimony by four credible witnesses, two of whom were authorized to testify on DHS's behalf.

B.    Psychological Harm

The Family Court also did not clearly err by finding and concluding that TH was psychologically harmed as a result of Parents' refusal to accept her return in FOFs 63, 72,[8] and COL 18, for those provisions are all based on credible testimony presented at the Petition hearing, and are summarized in several unchallenged FOFs.[9]  Moreover, regardless of whether TH was diagnosed with suffering emotional harm as a result of being abandoned, this testimony also supports the court's determinations in FOFs 67 and 68 that TH's feelings of rejection were not caused by two failed permanent placements.  Indeed, uncontested FOFs establish the credibility of the mental-health experts, including Dr. Mascarro, and that those expert witnesses believe that the impact of being rejected by Mother resulted in substantial impairment of TH's ability to function.

Finally, FOF 38 -- in which the Family Court noted that Mother did, and still does, prohibit TH from having contact with her sisters -- is valid because Mother essentially admits that it is true and her arguments for why it is clearly erroneous consist of Mother's attempt to convince this court that separating the children is justified.  Accordingly, we will not disturb the Family Court's psychological-health findings (i.e., FOFs 38, 63, 67, 68, 72) or conclusion (i.e., COL 18).

---

[8]      As to FOF 72, Father does not attack the determination that TH has suffered harm; rather, Father argues that he was not the cause of such harm. Mother argues that testimony by a DOH social worker "does not prove that in fact a diagnosis of emotional trauma to TH[] caused by [Mother] was determined by a qualified psychologist or psychiatrist.

[9]      The court's findings and conclusions regarding TH's mental health in FOFs 63, 72, and COL 18 all follow from uncontested FOFs that bind us on appeal: FOF 40 (see footnote 6, supra); FOF 53 (DHS-arranged psychologist diagnosed TH with three disorders and "noted that [TH] . . . appeared to be experiencing confusion and uncertainty about her living situation"); FOF 60 (therapeutic program addressed problems in the "Biological/Reunification Family Domain," among others); FOF 65 ("[TH's] mental health and emotional functioning, such as her feelings of sadness, were also negatively impacted by her lack of contact with her sisters, which contact has been prohibited by Mother."); and FOF 66 (noting that, in separate meetings, TH related "her feelings of rejection by Mother and her feelings about not being able to have contact with her sisters" to the DOH care coordinator, the DOH mental health supervisor, and an expert in the area of adolescent mental health therapy).

C.    Best Interests

        Father appears to argue that the Family Court erred in granting the Petition, wherein the court found that it was in TH's best interest to remain in a transitional home.  We disagree.  Indeed, the findings of psychological harm to TH, which we uphold above, support the court's conclusions in COL 15 (stating that both when TH was removed and at the time of trial, there was a reasonable cause to believe that placing TH into the foster home was necessary to protect TH) and COL 16 (concluding that "[c]ontinuation in [Parents'] family home" would have been contrary to TH's immediate welfare).  *See Stanford Carr*, 111 Hawai'i at 303 n.10, 141 P.3d at 476 n.10.

        Moreover in FOF 54, which is unchallenged on appeal, the Family Court found, in relevant part, that:

> DHS convened two 'Ohana Conferences with the Parents on March 31, 2014 and on May 6, 2014 to discuss placement options for [TH].  DHS told the Parents that the ultimate goal was to reunify [TH] with the Parents.  However, in the interim, due to [TH's] mental health problems, placement in a transitional family home would be appropriate until [TH] was therapeutically ready to return to the family home.  Both DHS and DOH told the Parents that [TH's] placement in a transitional family home was temporary, and that [TH] would need to ultimately reunify with Parents.  DOH also explained the mental health services that would assist [TH's] transition back to the family home which would address the Parents' concerns regarding [TH's] behaviors when she eventually would reside in the family home.

It follows from this FOF that, as the court noted in FOF 74, which we uphold, DHS made reasonable/active efforts to reunify TH with her adoptive family by identifying services and making referrals.  Moreover, considering this FOF and the record as a whole, it is clear (1) that DHS made reasonable efforts to "prevent or eliminate the need to remove" TH from the home, as the court concluded in COL 17; and (2) that "[Parents] are not presently willing and able to provide [TH] with a safe family home, even with the assistance of a service plan[,]" as the court concluded in COL 19.  *See id.*, 111 Hawai'i at 303 n.10, 141 P.3d at 476 n.10.  And finally, the record shows that once the court found that Parents were not presently willing and able to provide TH with a safe family home, the only available option was to transfer custody of TH to DHS.

8

IV.  Conclusion

Given the foregoing, the Family Court did not err in granting the Petition; neither Mother nor Father has demonstrated that FOFs 13, 33, 37-39, 49, 55, 59, 63, 67-74, and 95-98 are clearly erroneous, and neither has demonstrated that COLS 15-19 are wrong.

Therefore, IT IS HEREBY ORDERED that the Family Court of the First Circuit's December 10, 2015 Orders Concerning Child Protective Act is affirmed.

DATED:  Honolulu, Hawai'i, September 9, 2016.

On the briefs:

Herbert Y. Hamada
for Mother-Appellant.

Tae Chin Kim
for Father-Appellant.

Patrick A. Pascual,
Mary Anne Magnier,
Jay K. Goss, and
Lianne Lee Onishi,
Deputy Attorneys General,
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge